

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

July 18, 1952

Hon. R. Y. Lindsey, Jr.  
County Attorney  
Dawson County  
Lamesa, Texas

Opinion No. V-1483

Re: Legality of theatre prize schemes called "Quiz Bank" or "Quiz Show" and "Movie Sweepstakes."

Dear Sir:

You request an opinion of this office as to whether either of the following quoted fact situations constitutes a violation of Articles 654 and 655, Vernon's Penal Code, prohibiting lotteries and raffles.

"FACT SITUATION NO. I. A movie give-away show entitled either 'Quiz Bank' or 'Quiz Show' is operated on the following basis:

"At the time theatre tickets are purchased at the Drive-In Theatre located on the outskirts of the City, an attendant in front of the ticket booth passes out to each patron in the respective automobiles a card upon which is inscribed either 'Quiz Bank' or 'Quiz Show.' Also printed on the give-away cards are spaces for the answers to twelve questions. On the 'Quiz Bank' cards, answers to questions which are asked over the loudspeaker during intermission are made by punching a hole through the card under the heading of either 'Yes' or 'No', which constitutes the patrons answers to questions asked by the MC, which questions cover topics including historical events, geographical locations and subjects, or any other pertinent questions taken from encyclopedias or other sources of information to test the patron's skill. In connection with the 'Quiz Show' cards handed out to patrons, spaces are provided on the cards for patrons to designate an

answer to each of the ten questions pro-
jected on the screen by the process of
punching a hole through the card and de-
signating the patron's answer to be one
of three possible answers also projected
on the screen with the questions. The
patron designates which of the three an-
swers he thinks to be correct by punch-
ing a hole through the letter A, B, or C,
under the respective number on the card.
In both of the above set out give-away
shows, the patrons are given ten minutes
after the questions have been announced
over the loud-speaker or projected on
the screen in which to complete their an-
swers by making the appropriate punch
marks on the card and then depositing
their cards with their names and address-
es inscribed thereon in a common recepta-
cle in or near the concession stand in-
side the theatre. Normally, the prize
money starts off with an amount in the
bank designated at $25.00 up to $100.00,
as the prize for answering the questions
correctly, and if none of the patrons win
on the particular night, then an addi-
tional $25.00 is added to the prize money
and carried over to the next week's pro-
gram. In both of the Quiz Shows referred
to patrons need not be present to win the
prize money. Winners or the absence of a
winner at each particular program are us-
ually announced at the end of the last
feature shown by the respective theatres
for the evening. As stated above, one of
the Quiz Shows restricts all of its ques-
tions to matters pertaining to various
subject matter that is found in encyclo-
pedias and other periodicals. In the oth-
er quiz show, a portion of the questions
projected on the screen are lifted or de-
rived from scenes or circumstances per-
taining to a movie shown at this parti-
cular theatre several days prior to the
date of the Quiz Show, the rest of the
questions are taken from and pertain to
historical events and other miscellaneous
matters of a type normally given on radio
quiz shows and other types of give-away

programs. Patrons must purchase a theatre ticket at the respective ticket booths in order to be able to participate in 'Quiz Bank' or 'Quiz Show' as above outlined, even though they do not have to be present in the theatre to win or obtain the prize money give-away to the person answering all the questions correctly. It is my understanding that children under the age of 12 years are not permitted to participate in either the 'Quiz Bank' or 'Quiz Show' programs. . . ."

"FACT SITUATION NO. II. A local drive-in theatre, as an added inducement for building up patronage and attendance of its theatre, on one night out of every week presents a game called 'Movie Sweepstakes'. 'Movie Sweepstakes' is a game in which films of famous horce races are shown as a special attraction in the theatre on a particular night in the week. On the 'Sweepstakes' night, patrons inside the theatre select three of the films at random to be shown, which means that three separate horse races from actual scenes at a race-track are shown on the screen. These are then shown in the order selected and anyone who has previously chosen the correct winners in all three races wins a prize.

"To be eligible to win the prize, it is not necessary that one buy a ticket to the theatre, nor does one have to enter the theatre in order to collect his prize. Also, he need not be in the vicinity of the theatre at the time the races are shown. In the operation of 'Movie Sweepstakes', a game card is handed to all adults who care to pick one up at the theatre, whether he intends to buy a ticket and see the regular show or not. The cards are not handed out at the ticket office, but to anyone who desires one. Those not entering the theatre simply write their names and addresses on the bottoms of the cards which they then deposit in a nearby receptacle. Also on these cards are their choices of which horses they

believe will be the winners in the races to be shown inside the theatre. Persons purchasing a ticket to see the regular movie on 'Movie Sweepstakes' night are not given game cards at the time they purchase their tickets, but they must obtain them apart from the ticket office. They may either pick up the cards or not after or before they purchase their tickets, or they may pick up cards without even purchasing tickets.

"It is understood that the reason for not giving out the forms at the time the patrons purchase a ticket is to eliminate the possibility that the money paid for the ticket also pays in part for the game card. 'Movie Sweepstakes' operates by having patrons purchase tickets to see the regular movie and added shorts of which the Movie Sweepstakes is one, without regard to winning money. Then, if a patron desires to be eligible to play the game, he may pick up a game card without giving any consideration. He pays for movie entertainment only and if he does not buy a ticket, he still may be able to win a prize, although, of course, he will be excluded from watching the movie inside the theatre. The basis upon which this program operates is, that although there is a prize and a chance involved, it lacks the necessary element of consideration. . . ."

The Texas courts have defined a lottery as a scheme for the distribution of prizes by lot or chance among persons who have paid, or who have agreed to pay, a valuable consideration for the opportunity to win the awards. City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695 (1936); 54 C.J.S. 843, Lotteries, Sec. 1; 28 Tex. Jur. 409, 410, Lotteries, Sec. 2. Thus, every lottery contains three essential elements as follows: (1) prize; (2) chance; and (3) consideration.

Fact Situation No. I involves the question of whether the element of chance is to be found in the scheme. The same problem was considered in Attorney

General Opinion V-544 (1948). We there held in effect that if the conduct of a contest and the answers given to a set of questions are dependent primarily upon skill and knowledge rather than upon mere chance, the contest is lawful. On the other hand, if any controlling portion of a contest calls for and is dependent upon pure guesses or chances, it is a lottery and therefore unlawful. A determination of whether the scheme indicated by your Fact Situation No. I violates the lottery statutes depends upon the facts and circumstances of each contest and may not therefore be determined abstractly.

In Fact Situation No. II, however, the problem concerns the presence or absence of the element of consideration. If participation in the game were limited to theater ticket holders, the element of consideration would clearly be present, but such is not the case here. Non-patrons as well as patrons of the theater may compete for the awards. Therefore, the question for our determination is whether the distribution of "free" chances removes the element of consideration from this plan.

"Movie Sweepstakes," as described in your request, is basically similar to the various motion picture theater "Bank Nite" contests which have been considered by the courts of Texas in a number of different cases. Despite the fact that both patrons and non-patrons of the theaters were allowed to participate, these plans were held to be lotteries almost without exception. The distribution of "free" chances was considered but a subterfuge which would not have the effect of legalizing an otherwise illegal scheme. City of Wink v. Griffith Amusement Co., 129 Tex. 40, 100 S.W.2d 695 (1936); Cole v. State, 133 Tex. Crim. 548, 112 S.W.2d 725 (1938); Robb & Rowley, United v. State, 127 S.W.2d 221 (Tex. Civ. App. 1939); State v. Robb & Rowley, United, 118 S.W.2d 917 (Tex. Civ. App. 1938). Moreover, a number of other sales promotion enterprises in which the participating merchants distributed chances for prizes among their customers were declared lotteries even though a number of the chances were distributed to non-customers. Featherstone v. Independent Service Station Association, 10 S.W.2d 124 (Tex. Civ. App. 1928). See also Att'y Gen. Ops. 0-2843 (1940); V-1420 (1952).

In only one case, Griffith Amusement Co. v. Morgan, 98 S.W.2d 844, (Tex. Civ. App. 1936) was "Bank Nite" upheld. This decision, however, was neither cited nor followed in the more recent cases, and it cannot be considered controlling here. Neither have the principles enunciated in the "Bank Nite" cases been overturned by the recent decision in Brice v. State, 242 S.W.2d 433 (Tex. Crim. 1951), which arose out of circumstances entirely different from those before us.

It is difficult of course to ascertain from descriptive literature alone the exact nature of any given scheme. The written description might differ materially from the manner in which it is actually carried out. However, in "Movie Sweepstakes" as described in your request, it appears that a substantial portion of the chances for prizes are on the basis of the purchase of theater tickets. This constitutes a valuable consideration moving from the contestants to the donor of the prizes, and, under the authorities cited above, that element is not removed by the distribution of a number of "free" chances on request. It is our opinion, therefore, that "Movie Sweepstakes" constitutes a lottery prohibited by Article 654, Vernon's Penal Code.

## SUMMARY

Whether the theatre quiz contest plan known as "Quiz Bank" or "Quiz Show" is a lottery and violates Article 654, Vernon's Penal Code, is a question to be determined upon the facts and circumstances of each contest and cannot be determined abstractly as a matter of law. If the conduct of the contest and the answers to a given set of questions are dependent primarily upon skill and knowledge rather than upon mere chance, the contest is lawful. On the other hand if any controlling portion of the contest calls for and is dependent upon pure guess or chance, it is a lottery and is therefore unlawful.

The contest "Movie Sweepstakes," in which prizes are distributed to motion picture theatre ticket holders, is a lottery

prohibited by Article 654, V.P.C., even
though some of the chances for awards are
distributed to non-patrons of the theatre.

Yours very truly,

PRICE DANIEL
Attorney General

By Calvin B. Garwood, Jr.
        Assistant

APPROVED.

E. Jacobson
Reviewing Assistant

Charles D. Mathews
First Assistant

CBG/ec